**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **TIFFANY ZETZER**, on behalf of herself and all others similarly situated, | ) ) ) | CASE NO. 3:22-cv-02329 |
| Plaintiff, | ) ) | Magistrate Judge Darrell A. Clay |
| v. | ) ) ) | **JOINT MOTION FOR APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT** |
| **CROWN BATTERY MANUFACTURING COMPANY**, | ) ) ) | |
| Defendant. | ) ) | |

Plaintiff Tiffany Zetzer ("Named Plaintiff"), on behalf of herself and the Opt-in Plaintiffs, and Defendant Crown Battery Manufacturing Company ("Defendant") (collectively, the "Parties") respectfully move this Court for an Order approving their Fair Labor Standards Act ("FLSA") settlement. The settlement was reached by experienced wage and hour counsel during arms-length, good faith negotiations before a third-party neutral mediator.

The following documents are submitted for the Court's approval:

**Exhibit 1**: Collective Action Settlement Agreement and Release (the "Agreement"), as well as its Exhibits: A (Notice of Settlement) and B (list of Opt-In Plaintiffs);

**Exhibit 2**: Declaration of Robi J. Baishnab;

**Exhibit 3**: Plaintiff Declarations; and,

**Exhibit 4**: Proposed Order approving settlement.

1

**MEMORANDUM IN SUPPORT**

I.     **FACTUAL AND PROCEDURAL BACKGROUND.**

    A.  **Summary of the Claims and Defenses.**

Named Plaintiff and the Opt-In Plaintiffs worked for Defendant as battery production employees. (ECF No. 1 at ¶¶38, 41). This matter concerned allegations that Defendant violated the FLSA and Ohio law by failing to pay Named Plaintiff and others similarly situated for all overtime compensation earning for activities including, donning and doffing uniforms and gear, showering, and related walking, travel and waiting, as well as failing to pay wages on a semi-monthly basis. The Action also involves Defendant's alleged improper time clock rounding policy and practice, all of which allegedly resulted in Named Plaintiff and others similarly situated not being paid all of their overtime compensation in violation of the FLSA and Ohio law. (*Id*. at ¶¶32, 43).

Throughout the litigation Defendant vigorously denied any continues to deny liability and contested all allegations. While Named Plaintiff felt strongly about her claims and Defendant feels strongly about its defenses, the Parties reached a settlement, the terms of which are encompassed in the attached Collective Action Settlement Agreement and Release. (**Exhibit 1**, Agreement).

    B.  **Summary of the Procedural History.**

On December 28, 2022, Named Plaintiff filed a wage and hour collective action complaint in the United States District Court for the Northern District of Ohio, Western Division, against Defendant ("the Action"). Named Plaintiff brought the Action under the Fair Labor Standards Act ("FLSA") and the Ohio Minimum Fair Wage Standards Act ("OMFWSA"). (ECF No. 1). Defendant filed its Answer on February 13, 2023, in which it denied all claims asserted in the Action. (ECF No. 7).

To avoid the burden, expense, risk, and uncertainty of litigation, the Parties agreed to engage in Mediation with Magistrate Judge Darrell A. Clay on February 26, 2024 and subsequently

on August 16, 2024, when an agreement was reached. (Baishnab Dec. at ¶13). As part of the negotiations, Defendant produced certain time and pay data for the putative collective. The Parties respectively constructed a damages model using the produced data. The model served as a basis of negotiations. After good faith, arms' length negotiations, the Parties reached an agreement. (**Exhibit 2**, Baishnab Dec. at ¶¶13-16). The terms of the Parties' agreement are embodied in the attached **Exhibit 1**.

### C. Summary of the Key Settlement Terms.

At the time of settlement, 304 Opt-In Party Plaintiffs, including Named Plaintiff, had submitted a Consent to Join form, which were filed with the Court.[1]

The total settlement amount is **$483,286.96**. This amount includes: (1) all Individual Settlement Awards (as defined in the Agreement); (2) all Service Award payments; and (3) Plaintiffs' Counsel's attorneys' fees of one-third (1/3) and reimbursement of litigation costs; and (4) any Settlement Administrator's costs that exceed $5,819. Defendant will pay Settlement Administrator's costs up to $5,819 outside of the Gross Settlement Amount, with any amounts greater than this to be deducted from the settlement amount. In addition, Defendant will make all required employer tax contributions with respect to any portions of the Settlement Awards treated as wages under Internal Revenue Service ("IRS") Form W-2, and these contributions will not be deducted from the Global Settlement Fund. (Agreement at ¶17).

#### 1. Settlement Notice.

Upon the Court's approval, a Notice of Settlement (attached as Exhibit A to the Agreement) will be sent to the Plaintiffs along with their settlement payments. (*Id*. at ¶¶20, 48).

---

[1] ECF Nos. 1, 9, 10, 12-17, 20-22, 25, 27-28, 33-35, 37-45, 47, 49. Four of these Opt-In Party Plaintiffs withdrew their consent to join and notified the Court accordingly. *See* ECF Nos. 36, 53-55.

### 2. Allocation of the Settlement Fund.

As outlined in the Agreement, after deducting attorney's fees, litigation costs, Service Award payments, and Administration costs that exceed $5,819, if any, the remaining net amount will be allocated towards Individual Settlement Award payments which will be calculated on a *pro rata* basis of the Net Settlement Amount, determined by each Plaintiff's number of weeks worked during the Covered Period in comparison to the total number of workweeks worked by all Plaintiffs during the Covered Period. (*Id*. at ¶50). In no event will a Plaintiff receive an Individual Settlement Award less than **$100**. (*Id*. at ¶52). In exchange for the total settlement amount payment and other consideration provided for in the Agreement, this lawsuit will be dismissed with prejudice, and the Plaintiffs will release the Released Parties from the Released Claims, as defined in the Agreement. (*Id*. at ¶¶ 24-26).

### 3. Service Awards.

The Settlement provides for a Service Award to Named Plaintiff ($3,000) and seven Opt-In Party Plaintiffs ("Service Award Plaintiffs") ($250, each), for their participation in depositions, services in bringing and prosecuting the Action, and in consideration for the general release of claims. (*Id. at* ¶¶30-31, 34, 37-38, 63-66). Defendant does not contest this application and agrees it is reasonable. (Agreement at ¶¶37-38).

## II. PROPRIETY OF APPROVAL OF THE SETTLEMENT.

The Settlement is subject to approval by the Court pursuant to § 216(b) of the FLSA. Court approval is warranted on all scores.

### A. The Seven-Factor Standard is Satisfied.

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA, 29 U.S.C. § 216(b), "after scrutinizing the settlement for fairness." *Landsberg v. Acton Ents., Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food*

4

*Stores, Inc. v. United States*, 679 F.2d 1350, 1353–55 (11th Cir.1982) (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute") (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946))).

As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford v. Lexington-Fayette Urban County Gov't*, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008). The Sixth Circuit uses seven factors to evaluate class action settlements, and the *Crawford* court applied those factors in assessing the fairness of an FLSA settlement:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*See Hebert v. Chesapeake Operating, Inc.*, No. 2:17-cv-852, 2019 U.S. Dist. LEXIS 160792, at *6 (S.D. Ohio Sep. 20, 2019) (citing *Crawford*, 2008 U.S. Dist. LEXIS 90070, at *13-14; and *Int'l Union, United Auto., Aerospace, and Agr. Implement Workers of Am. v. Gen. Motors Corp.,* 497 F.3d 615, 631 (6th Cir. 2007)). The settlement in this case satisfies each of these elements.

### 1. No Indicia of Fraud or Collusion Exists.

There is no indicia of fraud or collusion, and "[c]ourts presume the absence of fraud or collusion unless there is evidence to the contrary." *Bailey v. Black Tie Mgmt. Co. LLC*, No. 2:19-cv-1677, 2020 U.S. Dist. LEXIS 144274, at *6 (S.D. Ohio Aug. 12, 2020) (quoting *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006)).

5

The Agreement was achieved only after arms-length and good faith negotiations between the Parties, with the assistance of a neutral mediator. (Baishnab Dec. at ¶16). As such, there is no indicia of fraud or collusion, and this factor favors approval of the settlement.

### 2. The complexity, expense, and likely duration of continued litigation favor approval.

The policy favoring the settlement of collective actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming. *See, Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at *8 (S.D. Ohio Aug. 17, 2018) ("[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them") (citations omitted).

If this case had not settled, the Parties would be required to engage in costly litigation and discovery, including written discovery, depositions, and possible site inspections and/or expert time studies. On the other hand, provides substantial relief to the Plaintiffs promptly and efficiently, and amplifies the benefits of that relief through the economies of class resolution. (Baishnab Dec. at ¶17).

### 3. The amount of discovery engaged in by the Parties.

The Parties engaged in substantial investigation and analysis prior to and while negotiating the Settlement. Specifically, Defendant produced certain time and pay data. Counsel for the Parties both constructed a damages model using the produced data for purposes of negotiations. Both sides were represented by competent and skilled wage and hour attorneys. During negotiations, Counsel argued vigorously for their respective positions, and disputes remain, including whether Defendant was liable, whether any wages were owed, whether there was an overtime wage violation under the FLSA or Ohio law, whether a two- or three- year statute of limitations under the FLSA was

6

applicable, whether liquidated damages under the FLSA were recoverable, whether the matter could be maintained on a collective/class basis, whether Plaintiff would prevail at trial, and what damages, if any, could be proven to a jury. Counsel for the Parties argued vigorously for their respective positions, and disputes remain. (Baishnab Dec. at ¶¶ 15, 18).

The Parties then engaged in additional discovery, including a Rule 30(b)(6) deposition of Defendant, and Defendant noticing Named Plaintiff and seven Opt-in Plaintiffs, and deposing all but one Opt-in Plaintiff. Consequently, not only were the factual and legal issues thoroughly investigated, but the potential damages in this case were also thoroughly investigated as well. (*Id*.). Accordingly, this factor supports settlement approval.

### 4. The likelihood of success on the merits.

The Settlement represents a compromise of disputed claims. Specifically, the Action alleges that Defendant violated the FLSA and Ohio law by not paying Named Plaintiff and those similarly situated for all overtime compensation earning for activities including, donning and doffing uniforms and gear, showering, and related walking, travel and waiting, as well as failing to pay wages on a semi-monthly basis. Claims also included alleged unlawful rounding. Defendant disputes the asserted claims and raised a number of defenses in its Answer and during negotiations. If this case had not settled, recovery may have been less, or, it is possible that there would be no recovery at all for the Plaintiffs. (Baishnab Dec. at ¶19).

### 5. The opinion of Plaintiffs' Counsel favors approval.

"The recommendation of Plaintiffs' Counsel, skilled in class actions and corporate matters, that the Court should approve the Settlement is entitled to deference." *Granada Invs., Inc. v. DWG Corp.*, 823 F. Supp. 448, 453 (N.D. Ohio 1993); and *Wright*, 2018 U.S. Dist. LEXIS 140019, at *11 (citing *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983)).

7

Plaintiffs' Counsel is highly experienced in wage-and-hour collective and class actions. At all times, acted in good faith and vigorously represented the interests of Plaintiffs. (Baishnab Dec. at ¶¶5-12; 17-35). Also, Plaintiffs' Counsel performed an extensive risk analysis, which accounted for various biases and the compounding nature of risk probabilities. This supports Plaintiffs' Counsel opinion that the Settlement is fair, reasonable, and in the best interests of the Plaintiffs. (Baishnab Dec. at ¶35). Accordingly, this factor favors approval of the Settlement.

### 6. The reaction of absent class members.

In this case, there are no absent class members. By submitting their Consent to Join forms, which have been filed with the Court, each Plaintiff has already agreed to join this case and be bound by any settlement approved by the Court. (29 U.S.C. § 216(b)). Additionally, Plaintiffs' Counsel obtained 226 sworn declarations from Plaintiffs who affirm that they are happy that this matter is resolved and expect that proceeds will benefit them and their families, and that they urge the Court to approve the settlement. (**Exhibit** 3, at ¶¶ 2, 4).

### 7. The public interest.

"Public policy generally favors settlement of class action lawsuits." *Wright*, 2018 U.S. Dist. LEXIS 140019, at *13 and *Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657, at *11 (N.D. Ohio Mar. 26, 2019) (quoting *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007)). Like in *Wright*, "the settlement confers immediate benefits on the Settlement Collective, avoids the risks and expense in further litigation, and conserves judicial resources." *Id.* Thus, as in *Wright*, the Court should find that this factor supports approval of the Settlement.

### B. The Settlement distributions are fair and reasonable.

In addition to evaluating the seven factors discussed above, the Court must also "ensure that the distribution of the settlement proceeds is equitable." *See e.g.*, *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *15 (N.D. Ohio Mar. 8,

8

2010); and *Feiertag v. DDP Holdings, LLC*, No. 14-CV-2643, 2016 U.S. Dist. LEXIS 122297, at *18 (S.D. Ohio Sep. 9, 2016) (citations omitted).

### 1. The Individual Settlement Payments are fair, adequate, and reasonable.

Each Plaintiff will receive a *pro rata* share of the Net Settlement Amount using the formula set forth in the Agreement, based on the number of workweeks each Plaintiff worked, and no payment will be less than $100. (Agreement at ¶¶ 50, 52). This ensures that each Plaintiff is compensated according to their alleged potential damages and is treated equitably in relation to all other Plaintiffs. The *pro rata* allocations "ensures an equitable distribution of settlement proceeds that is directly tied to the claims of and harm allegedly suffered by the settlement class members and will provide them with a proportionate share of the settlement funds." *Satterly v. Airstream, Inc.*, No. 3:19-cv-32, 2020 U.S. Dist. LEXIS 210868, at *22 (S.D. Ohio Sep. 25, 2020). Accordingly, this factor supports approval.

### 2. The Service Awards are proper and reasonable.

The Agreement provides for a Service Award of **$3,000** to Named Plaintiff and **$250** to the Service Award Plaintiffs who participated in depositions, in addition to their Individual Settlement Award payments. (Agreement at ¶¶37-38). Courts routinely approve service awards and payments to representative plaintiffs in class and collective action litigation because service awards "are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Barnes*, 2019 U.S. Dist. LEXIS 65657, at *18, and *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, at *21 (S.D. Ohio Dec. 3, 2019) (quoting *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)). Service awards are meant to "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Dillworth*, 2010 U.S. Dist. LEXIS 20446, at *7.

In this Circuit, service awards to representative plaintiffs are "typically justified where the named plaintiffs expend time and effort beyond that of the other class members in assisting class counsel with the litigation, such as by actively reviewing the case and advising counsel in the prosecution of the case." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997); *see also*, *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (among the factors warranting incentive awards are the "time and effort spent" by the individuals in question and "whether these actions resulted in a substantial benefit to Class Members").

Here, the Service Award Plaintiffs contributed significant time, effort, and detailed factual information enabling Plaintiffs' Counsel to evaluate the strength of this case and to reach a settlement. Named Plaintiff committed significant time responding to Plaintiffs' Counsel's inquiries and providing important facts, as well as attending the February mediation and being available throughout the August mediation. She also put her name on the line, filing a lawsuit on the public docket, and taking a risk of potentially being "black-listed." Further, the Service Award Plaintiffs attended depositions and committed time in furthering the prosecution of this Action. Defendant does not contest this application and agrees it is reasonable. (Agreement at ¶¶37-38; Baishnab Dec. at ¶36).

### 3. The attorney fees to Plaintiffs' Counsel are proper and reasonable.

After the Court has confirmed that the terms of settlement are fair to Plaintiffs, it may review the Agreement as to the provision of fees and costs to Plaintiffs' Counsel.

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). In *Fegley v. Higgins*, the Sixth Circuit held that the FLSA's mandatory

attorney fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir.1994), *cert. denied*, 513 U.S. 875 (1994) (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir. 1984)).

The Agreement provides for payment of attorneys' fees to Plaintiffs' Counsel in the amount of **$161,095.65**, or one-third (1/3) of the total settlement amount. (Agreement at ¶36). A one-third fee amount "is a normal fee amount in a wage and hour case." *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 U.S. Dist. LEXIS 204371, *13 (S.D. Ohio Nov. 25, 2019) (citing *Carr v. Bob Evans Farms, Inc.*, No. l:17-cv-1875, 2018 U.S. Dist. LEXIS 228221 (N.D. Ohio July 27, 2018)); *see also, Ganci*, 2019 U.S. Dist. LEXIS 207645, *15 (approving an award of 33 1/3% of a settlement fund in a wage and hour case); *Call v. CTA Pizza, Inc.*, No. 2:18-cv-00696, 2019 U.S. Dist. LEXIS 181325, *12 (S.D. Ohio Oct. 21, 2019) (same).

This Court has recognized that an award of one-third "is typical for attorney's fees in common fund, FLSA collective actions in this District" and is "the most appropriate method for determining reasonable attorneys' fees in wage and hour cases." *Hebert*, 2019 U.S. Dist. LEXIS 160792, at *4, and 21-22 (quoting *Swigart v. Fifth Third Bank*, 2014 U.S. Dist. LEXIS 94450, at * 14-15 (S.D. Ohio July 11, 2014)) (internal quotations omitted).

"Absent compelling reasons to the contrary," courts apply the percentage method in wage and hour cases, "as it best reflects FLSA's employee-protection objective." *Estate of McConnell v. EUBA Corp.*, No. 3:18-cv-00355, 2021 U.S. Dist. LEXIS 92836, at *15 (S.D. Ohio May 17, 2021) (citing *Dewald v. Time Warner Cable Inc.*, No. 16-cv-1129, 2021 U.S. Dist. LEXIS 32459,

11

at *16 (S.D. Ohio Feb. 16, 2021) (internal quotations omitted)). "[T]he percentage approach encourages efficiency, judicial economy, and aligns the interests of the lawyers with the class []." *Id.* (citing *In re Cardinal Health Inc. Sec. Litigs.*, 528 F. Supp. 2d 752, 762 (S.D. Ohio 2007). "[W]hile the lodestar approach incentivizes attorneys to work more hours, without regard to the quality of the output or the class's needs, the percentage approach instead 'rewards counsel for success and penalizes it for failure." *In re Cardinal Health Inc. Sec. Litigs.*, 528 F. Supp. 2d at 762.

Plaintiffs' Counsel accepted this case on a contingent fee basis and advanced all litigation fees, costs, and expenses. (Baishnab Dec. at ¶37). Thus, Plaintiffs' Counsel "assumed a real risk in taking on this case, preparing to invest time, effort, and money over a period of years with no guarantee of recovery. This factor weighs in favor of approving the requested fee award." *Ganci*, 2019 U.S. Dist. LEXIS 207645, at *19; and *In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 268 F. Supp. 2d 907, 936 (N.D. Ohio 2003) (Contingency fee arrangements indicate that there is a certain degree of risk in obtaining a recovery.") (further citation omitted).

Courts in this district acknowledge that "wage and hour class and collective actions, such as this, are inherently complex and time-consuming." *Brandenburg*, 2019 U.S. Dist. LEXIS 204371, at *10; and *Barnes*, 2019 U.S. Dist. LEXIS 65657, at *16. Given the inherent complexity of a wage and hour collective action and the disputed issues of fact and law in this case, an award of one-third of the settlement fund appropriately compensates Plaintiffs' Counsel for their prosecution of this case and advances the public's interests in rewarding attorneys who bring wage and hour cases. *See, e.g., In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 268 F. Supp. 2d at 930; and *Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, at *14 (S.D. Ohio June 24, 2011) ("society has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters.").

12

Defendant does not oppose the award of fees and agrees the request is reasonable. (Agreement at ¶36). Accordingly, the Court should approve the requested attorneys' fees.

### 4. The Court should authorize reimbursement to Plaintiffs' Counsel of their out-of-pocket expenses incurred in this case.

Plaintiffs' Counsel should also be reimbursed for their litigation costs, which as of the date of this Motion are approximately **$13,427.33**. (Baishnab Dec. at ¶37). "Under the common fund doctrine, Class Counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement." *Brandenburg*, 2019 U.S. Dist. LEXIS 204371 at *20. In fact, "[e]xpense awards are customary when litigants have created a common settlement fund for the benefit of a class." *Id.*

Litigation costs include the filing fee, service of process, correspondence, postage, consultant fees, and creation of the damages model. (Baishnab Dec. at ¶37). Because Plaintiffs' Counsel's litigation costs were incurred in the prosecution of the claims in this case and in obtaining settlement, the Court should award reimbursement of these costs to Plaintiffs' Counsel. Defendant does not object to this request and agrees it is reasonable. (Agreement at ¶36).

## III. CONCLUSION.

The Parties submit that this settlement is a fair and reasonable resolution of the disputed issues, which is consistent with the goal of securing the just, speedy, and inexpensive determination of every action. Accordingly, the Parties request that this Court: (1) enter the proposed Order Granting Joint Motion for Approval of Collective Action Settlement and Dismissal with Prejudice; (2) approve Plaintiffs' Counsel's request for attorney fees and costs; (3) approve the requested service payments; and (4) retain jurisdiction to enforce the settlement, if necessary.

13

Respectfully submitted,

| **NILGES DRAHER LLC** | **EASTMAN & SMITH LTD** |
|---|---|

*/s/ Robi J. Baishnab*  
Robi J. Baishnab (0086195)  
1360 E. 9th St., Suite 808  
Cleveland, OH 44114  
Telephone: (216) 230-2955  
Facsimile: (330) 754-1430  
Email: rbaishnab@ohlaborlaw.com

Shannon M. Draher (0074304)  
Hans A. Nilges (0076017)  
7034 Braucher Street, N.W., Suite B  
North Canton, OH 44720  
Telephone: (330) 470-4428  
Facsimile: (330) 754-1430  
Email: sdraher@ohlaborlaw.com  
         hans@ohlaborlaw.com

*Counsel for Plaintiffs*

*/s/ James B. Yates (with permission)*  
James B. Yates  
One Seagate, 27th Floor  
Toledo, OH 43604  
(419) 241-6000  
Fax (419) 247-1777  
Email: jbyates@eastmansmith.com

Elizabeth L. Bolduc (0096901)  
One Seagate, 27th Floor  
Toledo, OH 43604  
(419) 241-6000  
Fax (419) 247-1777  
Email: elbolduc@eastmansmith.com

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed for service via the Court's CM/ECF system on this September 20, 2024. Parties may access this filing through the Court's system.

                                                  */s/ Robi J. Baishnab*  
                                                  *Counsel for Plaintiffs*